UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

ILIFE TECHNOLOGIES, INC.,

     Plaintiff,

v.                                                                      Case No. 3:13-cv-4776-M

BODYMEDIA, INC.,

     Defendant.

**PLAINTIFF'S RESPONSE TO
DEFENDANT'S MOTION TO TRANSFER VENUE
AND BRIEF IN SUPPORT**

Michael C. Wilson
mwilson@munckwilson.com
Texas Bar No. 21704590
S. Wallace Dunwoody
wdunwoody@munckwilson.com
Texas Bar No. 24040838

Munck Wilson Mandala, LLP
12770 Coit Road, Suite 600
Dallas, Texas 75251
Phone: (972) 628-3600
Fax: (972) 628-3616

ATTORNEYS FOR PLAINTIFF
ILIFE TECHNOLOGIES, INC.

# TABLE OF CONTENTS

INTRODUCTION .................................................................................................................. 1

FACTUAL BACKGROUND.................................................................................................. 2

A.   iLife conducted its business in Dallas, Texas throughout the time when it
     invented, developed, and patented the technology at issue. ..................................... 2

B.   Plaintiff is a Texas corporation with an office, bank account, phone
     number, business records, and business activities in the Northern District
     of Texas ................................................................................................................... 5

C.   Six nonparty witnesses, including an inventor, two former executives, and
     the prosecuting attorneys, are located in the Northern District of Texas. ............... 6

D.   All documents relating to invention, prosecution, commercialization,
     litigation, and other items requested by Defendant are located in this
     District. .................................................................................................................... 8

E.   Other factors make the Northern District of Texas convenient, including
     time to disposition and trial and firm trial settings. ............................................... 9

F.   Other witnesses are located closer to the Northern District of Texas,
     including three inventors in Colorado and two of Defendant's co-founders
     in California. .......................................................................................................... 10

LEGAL STANDARD ......................................................................................................... 11

ARGUMENT AND AUTHORITIES.................................................................................. 13

A.   The Private Interest Factors Favor the Northern District of Texas. ....................... 13

     1.   The relative ease of access to sources of proof favors the Northern
          District of Texas............................................................................................ 13

     2.   The availability of compulsory process to secure the attendance of
          witnesses favors the Northern District of Texas............................................ 14

     3.   The cost of attendance for willing witnesses favors the Northern
          District of Texas............................................................................................ 17

     4.   All other practical problems that make trial of a case easy,
          expeditious, and inexpensive favor the Northern District of Texas........... 20

B.   The Public Interest Factors Favor the Northern District of Texas. .......................... 21

1.  The administrative difficulties flowing from court congestion favor the Northern District of Texas................................................................. 21

2.  The local interest favors the Northern District of Texas. ............................ 22

3.  The familiarity of the forum with the law that will govern the case is neutral................................................................................................ 24

4.  The avoidance of unnecessary problems of conflict of laws is neutral................................................................................................ 24

C.  The Interests of Justice Favor the Northern District of Texas. .................................. 25

CONCLUSION ................................................................................................................ 25

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*AT&T Intellectual Prop. v. Airbiquity Inc.*,
  2009 WL 774350 (N.D. Tex. Mar. 24, 2009) ...................................................................12

*Comcast Cable Commc'ns, LLC v. British Telecom. PLC*,
  3:12-CV-1712-M, 2012 WL 6625359 (N.D. Tex. Dec. 20, 2012) ......................................19

*Emanuel v. SPX Corp./OTC Tools Div.*,
  CIV.A. 6:09CV220, 2009 WL 3063322 (E.D. Tex. Sept. 21, 2009)....................................15

*Frost v. ReliOn, Inc.*,
  No. 3:06–cv–0822–G, 2007 WL 670550 (N.D. Tex. Mar. 2, 2007)....................................19

*H-W Tech., L.C. v. Domino's Pizza LLC*,
  3:13-CV-1922-G BH, 2013 WL 6333438 (N.D. Tex. Dec. 5, 2013) .............................13, 25

*iLife v. ActiveCare*,
  No. 3:12-cv-5161-M (N.D. Tex. Dec. 18, 2012) ..................................................................6

*iLife v. Aliph d/b/a Jawbone*,
  No. 3:13-cv-4780-M (N.D. Tex. Dec. 6, 2013) ....................................................................6

*iLife v. BodyMedia*,
  No. 3:13–cv-4776-M (N.D. Tex. Dec. 6, 2013) ....................................................................6

*iLife v. Fitbit*,
  No. 3:13-cv-4778-M (N.D. Tex. Dec. 6, 2013) ....................................................................6

*iLife v. Lifeline Systems Co.*,
  No. 3:12-cv-5157-M (N.D. Tex. Dec. 18, 2012) ..................................................................6

*iLife v. Nintendo of America*,
  No. 3:13-cv-4787-M (N.D. Tex. Dec. 23, 2013) ..................................................................6

*iLife v. OnAsset Intelligence*,
  No. 3:12-cv-5155-M (N.D. Tex. Dec. 18, 2012) ..................................................................6

*iLife v. Pioneer Security*,
  No. 3:12-cv-5162-M (N.D. Tex. Dec. 18, 2012) ..................................................................6

*iLife v. Under Armour*,
  No. 3:13-cv-4781-M (N.D. Tex. Dec. 6, 2013)....................................................................6

*In re EMC Corp.*,
    501 Fed.Appx. 973 (Fed. Cir. 2013) ...................................................................20

*In re Genentech, Inc.*,
    566 F.3d 1338 (Fed. Cir. 2009) ............................................................13, 16, 21

*In re Microsoft*,
    630 F.3d 1361 (Fed. Cir. 2011) ............................................................22, 23, 24

*In re TS Tech USA Corp.*,
    551 F.3d 1315 (Fed. Cir. 2008) ...................................................................14

*In re Volkswagen AG*,
    371 F.3d 201 (5th Cir. 2004) (per curiam) ...............................................12, 17

*In re Volkswagen of Am., Inc.*,
    545 F.3d 304 (5th Cir. 2008) (en banc).............................................12, 13, 22

*In re Volkswagen of Am., Inc.*,
    566 F.3d 1349 (Fed. Cir. 2009) ...................................................................20

*In re Zimmer Holdings*,
    609 F.3d 1378 (Fed. Cir. 2010) ...............................................................22, 23

*John Crane Prod. v. R2R and D, LLC*,
    3:11-cv-3237-D, 2012 WL 1605553 (N.D. Tex. May 8, 2012) ................11, 12, 17

*Mannatech, Inc. v. Country Life, LLC*,
    310-CV-533-O, 2010 WL 2944574 (N.D. Tex. July 26, 2010)................11, 20, 22

*Massman v. iLife*,
    No. 3:04-cv-588 (N.D. Tex. Mar. 19, 2004) .......................................................23

*Mid-Continent Cas. v. Petroleum Solutions, Inc.*,
    629 F. Supp. 2d 759 (S.D. Tex. 2009) ...............................................................19

*Mitel Networks Corp. v. Facebook, Inc.*,
    943 F. Supp. 2d 463 (D. Del. 2013)............................................................16, 19

*MyMail, Ltd. v. Am. Online, Inc.*,
    223 F.R.D. 455 (E.D. Tex. 2004) ...................................................................20

*Nokia Corp. v. Buca, Inc.*,
    3-01-CV-2613-R, 2002 WL 1461913 (N.D. Tex. July 2, 2002)...........................15

iv

*Sanofi-Aventis Deutschland GmbH v. Novo Nordisk, Inc.,*
    614 F. Supp. 2d 772 (E.D. Tex. 2009) ...........................................................................16, 19

*Siragusa v. Arnold,*
    3:12-CV-04497-M, 2013 WL 5462286 (N.D. Tex. Sept. 16, 2013) ....................................22

*USPG Portfolio Two, LLC v. John Hancock Real Estate Fin., Inc.,*
    3:10-CV-2466-D, 2011 WL 1103372 (N.D. Tex. Mar. 25, 2011) .......................................19

*Vargas v. Seamar Divers Intern.,*
    2:10-CV-178-TJW, 2011 WL 1980001 (E.D. Tex. May 20, 2011) ................................15, 17

**STATUTES**

28 U.S.C. § 1404(a) ...............................................................................................................11, 17

## INTRODUCTION

Defendant seeks to transfer this case to its home venue—the Western District of Pennsylvania—purportedly because iLife has no legitimate ties to this District. As shown below, the Northern District of Texas is a logical and convenient forum for this case with longstanding, meaningful connections to iLife and the patents. For example:

- iLife's parent company, the original assignee of the patents in suit, was based in Dallas for the critical years when it invented and developed the technology at issue, prosecuted the patents, and brought its commercial embodiments of the patents to market;

- Edward L. Massman, an inventor and former President of iLife Systems, Inc. and iLife Solutions, Inc., is an important nonparty witness located in the Northern District of Texas;

- Charles M. Edwards, former Chief Financial Officer and Vice President of Operations of iLife Systems and iLife Solutions, is another important nonparty witness located in the Northern District of Texas;

- All patent prosecution activities occurred in the Northern District of Texas, and all prosecution files and prosecuting attorneys are located in the Northern District of Texas;

- Plaintiff is a Texas corporation with its office, bank account, phone number, business records, and business activities in this District;

- All business records and sources of proof relating to iLife and its products are located in the Northern District of Texas;

- Since 2012, iLife has filed nine related patent infringement cases in the Northern District of Texas against defendants located in California, Maryland, Massachusetts, Nevada, Pennsylvania, Texas, and Washington—no single venue is convenient for everyone, but it is best to keep all the related cases in this Court for efficiency, consistency, and the convenience of nonparty witnesses located in this District; and

- The Northern District of Texas is faster than the Western District of Pennsylvania in time to disposition and time to trial, even without adding the delays inherent with a transfer.

The private and public interest factors show that the Northern District of Texas—not the Western District of Pennsylvania—is the most convenient and logical venue for a trial on the patents in suit. Transferring the case would unfairly shift the burden and expense of remote litigation to nonparty witnesses in this District and the injured party with fewer resources, depriving Plaintiff of its choice of venue. Because Defendant has not met—and cannot meet—its burden of showing that the Western District of Pennsylvania is "clearly more convenient" than the Northern District of Texas, the Court should deny Defendant's motion to transfer and retain this case.

## FACTUAL BACKGROUND

### A.   iLife conducted its business in Dallas, Texas throughout the time when it invented, developed, and patented the technology at issue.

Beginning in the early 1990s, iLife invested millions of dollars in research and development of electromechanical devices for monitoring medical conditions such as sleep apnea, sudden infant death syndrome, and fall prevention for elderly patients.[1] The patents in suit were a result of that research.[2] iLife was based in Dallas, Texas from

---

[1] Lehrman Dec. ¶ 2 (App. 3); *see also* Lehrman Dec. ¶ 2, n.1 (App. 3) ("iLife Systems, Inc. f/k/a Caring Technologies, Inc. was a Delaware corporation formed in 1985. In 1999, it moved its headquarters to Dallas, Texas. In 2001, iLife Solutions, Inc. was formed as the successor to iLife Systems. Plaintiff is a subsidiary of iLife Systems.").

[2] Lehrman Dec. ¶ 2 (App. 3).

1999 to 2003 while it developed and patented this technology.[3] The inventors, as employees and consultants of iLife, assigned their inventions to iLife.[4]

The patent family includes eight issued U.S. patents.[5] All the patents claim priority to U.S. Pat. Appl. No. 09/396,331, filed September 15, 1999, which issued October 23, 2001, as U.S. Pat. No. 6,307,481.[6] As stated in the '481 patent abstract,

> The present invention introduces systems . . . that evaluate movement of a body relative to an environment. According to an exemplary embodiment, the system comprises a sensor and a processor. The sensor, which is associable with the body, is operable to repeatedly sense accelerative phenomena of the body. The processor, which is associated with the sensor, is operable to process the sensed accelerative phenomena as a function of at least one accelerative event characteristic. [T]he processor generates state indicia relative the environment, and determines whether the evaluated body movement is within environmental tolerance. In a preferred embodiment, the processor communicates various state indicia to a monitoring controller, preferably using at least one of a wired network and a wireless network. The monitoring controller cooperates with the processor to remotely monitor the body.[7]

In 2000, iLife introduced its own commercial embodiments of the patents, which were personal emergency response systems with reliable motion evaluation and fall detection capabilities—devices intended to provide security and independence for

---

[3] Lehrman Dec. ¶ 3 (App. 3).

[4] Lehrman Dec. ¶ 3 (App. 3).

[5] Lehrman Dec. ¶ 3 (App. 3-4); *see* Patent Cover Pages (App. 9-16).

[6] Patent Cover Pages (App. 9-16).

[7] '481 Patent Cover Page (App. 9).

elderly patients at risk of falls.[8] iLife marketed its products to ADT Security Services, Brinks Home Security, Pioneer Medical Systems, SOS Industries, and various others.[9]

Like many small technology companies, iLife faced financial challenges.[10] In 2004, iLife moved its corporate headquarters to New York at the request of its New York lenders, then to Bethesda, Maryland.[11] Since moving from Dallas, however, iLife's commercial activities relating to its motion-detection technology have been minimal.[12] iLife's principals have devoted their time to sleep apnea projects on behalf of Sleep Experts, Inc., a company that shares offices with iLife in Maryland.[13] Most of iLife's significant business activities, especially those relevant to the asserted patents, occurred while iLife was based in Dallas.[14] In 2012, iLife Solutions assigned the patents to a subsidiary—Plaintiff iLife Technologies— with the goal of licensing and enforcing its innovative motion-detection patents and technology.[15] Since that time, iLife Technologies, a Texas corporation, has entered into six patent license agreements, which are generally governed by Texas law and enforceable exclusively in this District.

---

[8] Lehrman Dec. ¶ 5 (App. 4); *see also* HealthSensor Sales Guide (App. 17-18).

[9] Lehrman Dec. ¶ 6 (App. 4); *see also, e.g.,* ADT Distribution Agreement (App. 19); Mytrex License Agreement (App. 23); Brinks Correspondence (App. 28); Pioneer Distribution Agreement (App. 31); SOS License and Distribution Agreement (App. 35); TeleLarm Letter of Intent (App. 48); Tel-tron Offer Letter (App. 50).

[10] Lehrman Dec. ¶ 7 (App. 4).

[11] Lehrman Dec. ¶ 7 (App. 4).

[12] Lehrman Dec. ¶ 7 (App. 4-5).

[13] Lehrman Dec. ¶ 7 (App. 5).

[14] Lehrman Dec. ¶ 7 (App. 5).

[15] Lehrman Dec. ¶ 11 (App. 6); *see also* Certificate of Formation for iLife Technologies (App. 51); Assignment from iLife Solutions to iLife Technologies (App. 52-54).

**B.** **Plaintiff is a Texas corporation with an office, bank account, phone number, business records, and business activities in the Northern District of Texas**

iLife Technologies is a Texas corporation formed on October 7, 2012.[16] Its business is the licensing and enforcement of patents on technology developed by iLife.[17] Since November 1, 2012, iLife Technologies has maintained an office in the Northern District of Texas at 1600 Airport Freeway, Bedford, Texas, near DFW International Airport.[18] This is an executive office with a receptionist, conference rooms, internet access, printers, copiers, fax machines, and other customary office equipment. iLife Technologies does not share its office with any other company.[19] All of iLife's business records (summarized below) are located at its office.[20] iLife Technologies maintains its bank account with a local Dallas bank and has a local Dallas phone number.[21] Currently, iLife's licensing and enforcement activities are conducted by outside counsel in Dallas, with management and ministerial functions, such as approving transactions, signing agreements, and paying rent, handled by iLife Technologies' officers.[22]

Since December 2012, iLife Technologies has filed nine related patent infringement suits on this family of patents against defendants based in California,

---

[16] Certificate of Formation for iLife Technologies (App. 51).

[17] Lehrman Dec. ¶¶ 11, 13 (App. 6).

[18] Lehrman Dec. ¶ 12 (App. 6); *see also* iLife Technologies Office Lease (App. 55-57).

[19] Lehrman Dec. ¶ 12 (App. 6).

[20] Lehrman Dec. ¶ 15 (App. 7).

[21] Lehrman Dec. ¶ 14 (App. 7).

[22] Lehrman Dec. ¶ 13 (App. 6).

Maryland, Massachusetts, Nevada, Pennsylvania, Texas, and Washington.[23] Five of these cases—ActiveCare, Pioneer, OnAsset, Lifeline, and Under Armour—have resulted in execution of patent licenses referenced above. Other suits remain pending, and iLife anticipates it may file other related cases here.[24]

**C.      Six nonparty witnesses, including an inventor, two former executives, and the prosecuting attorneys, are located in the Northern District of Texas.**

Edward L. Massman is an inventor on seven of eight patents and was President of iLife Systems, Inc. and iLife Solutions, Inc. from 1999 to 2003, when iLife invented, patented, and developed its technology.[25] Massman has personal knowledge of the invention story and iLife's attempts to commercialize its inventions because he personally ran the company, negotiated agreements, and dealt with business partners.[26] Massman lives in Dallas and has no current role with iLife.[27] Massman is expected to provide highly important and credible testimony concerning his inventions and iLife's business operations during his tenure. But he sued iLife for unpaid compensation in 2004 after iLife moved from Dallas to New York, ending his tenure with the company.[28]

---

[23] Lehrman Dec. ¶ 16 (App. 7) (identifying *iLife v. OnAsset Intelligence*, No. 3:12-cv-5155-M; *iLife v. Lifeline Systems Co.*, No. 3:12-cv-5157-M; *iLife v. ActiveCare*, No. 3:12-cv-5161-M; *iLife v. Pioneer Security*, No. 3:12-cv-5162-M; *iLife v. BodyMedia*, No. 3:13-cv-4776-M; *iLife v. Fitbit*, No. 3:13-cv-4778-M; *iLife v. Aliph d/b/a Jawbone*, No. 3:13-cv-4780-M; *iLife v. Under Armour*, No. 3:13-cv-4781-M; and *iLife v. Nintendo of America*, No. 3:13-cv-4787-M).

[24] Lehrman Dec. ¶ 16 (App. 7).

[25] Lehrman Dec. ¶ 9 (App. 5).

[26] Lehrman Dec. ¶ 9 (App. 5).

[27] Lehrman Dec. ¶ 9 (App. 5); *see also* Dallas Central Appraisal District Printouts (App. 69).

[28] Lehrman Dec. ¶ 9 (App. 5).

As a result, Plaintiff believes it is unlikely Massman would take time away from his family and business to travel half-way across the country to testify in the Western District of Pennsylvania, especially if there are multiple out-of-state trials.[29] Because he lives in Dallas, Massman is within absolute subpoena power of this Court and can conveniently testify in this District.

Charles M. Edwards was Chief Financial Officer and Vice President of Operations of iLife Systems and iLife Solutions from 1999 to 2003.[30] Edwards, who still lives in Dallas, can testify about iLife's business operations, finances, and business plans.[31] Like Massman, Edwards' tenure with the company ended when it moved its headquarters from Dallas to New York, and he is unlikely to travel half-way across the country to testify, especially for three out-of-state trials.[32] Edwards can, however, conveniently be compelled to testify at trial if the case remains in Texas.

Since the late 1990s, all prosecution and maintenance activities relating to iLife's patents have been handled by patent attorneys located in the Northern District of Texas.[33] William A. Munck, Daniel E. Venglarik, John T. Mockler, and Frederick D. Hamilton were the prosecuting attorneys for the patents in suit.[34] They are nonparty

---

[29] Lehrman Dec. ¶ 9 (App. 5).

[30] Lehrman Dec. ¶ 10 (App. 6).

[31] Lehrman Dec. ¶ 10 (App. 6); *see also* Dallas Central Appraisal District Printouts (App. 70).

[32] Lehrman Dec. ¶ 10 (App. 6).

[33] Lehrman Dec. ¶ 4 (App. 4).

[34] Lehrman Dec. ¶ 4 (App. 4); *see also* Lehrman Dec. ¶ 4 (App. 4) ("William A. Munck, one of the prosecuting attorneys, has served as outside counsel to iLife since the late 1990s.").

witnesses located in the Northern District of Texas who are expected to testify regarding issues relating to prosecution of the patents in suit. Two of the prosecuting attorneys are no longer members of the firm representing iLife in this case and are not likely to be cooperative regarding attending trial in another venue.

**D.   All documents relating to invention, prosecution, commercialization, litigation, and other items requested by Defendant are located in this District.**

Defendant served Plaintiff with 104 document requests covering every conceivable issue that might possibly be relevant, including the following:[35]

Request 14:   "All Documents relating to any of the Patents-in-Suit."

Request 17:   "All Documents relating to any named inventor of any of the Patents-in-Suit."

Request 23:   "All Documents relating to . . . any product, device, prototype, or system that is an embodiment of any alleged invention claimed in any of the Patents-in-Suit and the research, design, development, manufacture, assembly, testing, operation, sale, or marketing of such products."

Request 31:   "All Documents concerning any license of . . . the Patents-in-Suit or any Related Patent or Application."

Request 55:   "All Documents relating to any litigation or potential litigation concerning any of the Patents-in-Suit."

Request 63:   "All Documents concerning the formation, organization, and management structure of iLife and any of its predecessors."

Request 67:   "All Documents sufficient to show the financial condition of iLife from its creation to the present . . . ."

---

[35] Defendant's First Request for Production to Plaintiff (App. 75-84).

All of iLife's business records are located in the Northern District of Texas, including the following:

- Prosecution and litigation files;

- Invention files, research and development documents, technical documents, and code;

- Marketing materials, contracts and purchase orders, licenses, and distribution agreements;

- Corporate records, business plans, board resolutions, and financials;

- Physical specimens of devices and other items.[36]

Some of these items, such as inventor notebooks and source code, were copied from the inventors' files at Halleck Willard, Inc. in Colorado in early 2013, but most of these items, especially those relating to iLife's patents, products, and business, have been continuously kept in Dallas for over a decade.[37]

**E.      Other factors make the Northern District of Texas convenient, including time to disposition and trial and firm trial settings.**

The average time to disposition and trial in this District is faster than the national average, whereas the Western District of Pennsylvania is slower.[38]

---

[36] Lehrman Dec. ¶ 15 (App. 7).

[37] Lehrman Dec. ¶ 15 (App. 7) ("[M]any of these documents were continuously kept in Dallas by iLife's attorneys and former officers, including patent prosecution files, business plans, financials, corporate records, product descriptions, presentations, technical papers, drawings, specifications, test data, manuals, contracts, and many other items.").

[38] USDC National Judicial Caseload Profile printouts (App. 71-74).

| Court | Time to disposition for a civil case | Time to trial for a civil case |
|---|---|---|
| National Average | 8.5 | 26.5 |
| NDTX Average | 6.3 | 25.9 |
| WDPA Average | 6.8 | 31.3 |

This Court even offers parties a trial in six months if both sides consent. Moreover, the patent panel judges in the Northern District of Texas are committed to providing patent cases with firm trial settings, which is very important to litigants.

**F.      Other witnesses are located closer to the Northern District of Texas, including three inventors in Colorado and two of Defendant's co-founders in California.**

Michael D. Halleck, Michael E. Halleck, and Alan R. Owens are inventors who are expected to tell the invention story and testify about their contributions to the patents and the development of iLife's commercial embodiments of the patents.[39] They are nonparty witnesses who live outside of Denver, Colorado, which is 763 miles (a 1:45 hour flight) from Dallas and 1,261 miles (a 2:50 hour flight) from Pittsburg.[40] Additionally, for iLife's party witnesses, the Northern District of Texas is more convenient because iLife Technologies' office, attorneys, records, and nonparty witnesses are in the Dallas area.

Defendant has identified five executive officers in Pittsburg who are knowledgeable about its business and the accused products. Additionally, Defendant identifies five potential nonparty witnesses outside of Texas:

---

[39] Lehrman Dec. ¶ 19 (App. 8).

[40] Google Maps Printouts (App. 63-64).

| Witness | Location | Role |
|---------|----------|------|
| Chris Pacione | Western District Pennsylvania[41] | Former co-founder of BodyMedia |
| David Andre | Northern District California | Former Director of Research and Informatics at BodyMedia |
| Eric "Astro" Teller | Northern District California | Former co-founder and CEO of BodyMedia |
| Mark Friedman | Western District Pennsylvania | Inventor of prior art cited by the patents in suit |
| Michael Rencavage | Middle District Pennsylvania | Inventor of prior art cited by the patents in suit |

But Defendant did not provide general descriptions of the witnesses' expected testimony or evidence indicating that they are unwilling to testify in Dallas.

## LEGAL STANDARD

For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought. 28 U.S.C. § 1404(a). The decision to transfer is made to prevent waste of time, energy, and money and to protect litigants, witnesses, and the public against unnecessary inconvenience and expense. *John Crane Prod. v. R2R and D, LLC*, 3:11-cv-3237-D, 2012 WL 1605553, at *1 (N.D. Tex. May 8, 2012). The court cannot transfer a case where the result is merely to shift the inconvenience of the venue from one party to the other. *Id.*; *see Mannatech, Inc. v. Country Life, LLC*, 310-CV-533-O, 2010 WL 2944574, at *3 (N.D. Tex. July 26, 2010) ("[A] decision to transfer venue must not simply shift the

---

[41] The distance from Dallas to Pittsburg is 1,257 miles (a 3:00 hour flight), Dallas to San Francisco is 1,729 miles (a 3:15 hour flight), and San Francisco to Pittsburg is 2,577 miles (a 4:50 hour flight). *See* Google Maps Printouts (App. 66-68).

expense and inconvenience of litigating in a particular venue from one party to the other."). As this Court has observed,

> [t]he plaintiff's choice of venue is . . . entitled to deference, and therefore the party seeking transfer has the burden to show good cause for the transfer. The burden on the movant is "significant," and for a transfer to be granted, the transferee venue must be "clearly more convenient than the venue chosen by the plaintiff."

*AT&T Intellectual Prop. v. Airbiquity Inc.*, 2009 WL 774350, at *1 (N.D. Tex. Mar. 24, 2009) (quoting *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 315 (5th Cir. 2008) (en banc) ("*Volkswagen II*")). The weight accorded to a plaintiff's choice of forum is greater when the plaintiff elects to file suit in its home forum. *John Crane*, 2012 WL 1605553, at *1.

The court must first decide if the judicial district to which transfer is sought would have been a district in which the claim could have been filed. *In re Volkswagen AG*, 371 F.3d 201, 203 (5th Cir. 2004) (per curiam) ("Volkswagen I"). If so, the court must then evaluate a number of private and public interest factors, none of which are given dispositive weight. *Volkswagen I*, 371 F.3d at 203.

> The private concerns include: (1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious and inexpensive. The public concerns include: (1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws [or] the application of foreign law.

*Id.* Although these factors are appropriate for most transfer cases, they are not necessarily exhaustive or exclusive. *Volkswagen II*, 545 F.3d at 315. Finally, even if the factors weigh heavily in favor of transfer, a court can decline to transfer a case if doing

so is against the "interest of justice." *H-W Tech., L.C. v. Domino's Pizza LLC*, 3:13-CV-1922-G BH, 2013 WL 6333438, at *7 (N.D. Tex. Dec. 5, 2013).

**ARGUMENT AND AUTHORITIES**

Because Plaintiff could have filed this case in the Western District of Pennsylvania, the Court must evaluate the private and public interest factors.

**A. The Private Interest Factors Favor the Northern District of Texas.**

**1. The relative ease of access to sources of proof favors the Northern District of Texas.**

The sources of proof will be mostly documentary evidence. While the bulk of relevant evidence in a patent case sometimes comes from the accused infringer, *In re Genentech, Inc.*, 566 F.3d 1338, 1345 (Fed. Cir. 2009), the discovery to date indicates that more of the sources of proof in this case will come from Plaintiff. For example, Defendant has requested 104 categories of documents from Plaintiff covering every conceivable subject regarding iLife and related companies. All documents responsive to these requests are maintained in the Northern District of Texas. By comparison, Plaintiff has requested 32 categories of documents from Defendant, including technical documents, sales figures, and marketing materials. Defendant claims these documents are maintained in Pennsylvania, but there is no indication that the "bulk" of relevant evidence will come from Defendant.

In any event, this factor is less important in a case like this where the only evidence identified by Defendant is documentary, not bulky physical evidence. *Cf. In re Volkswagen of Am., Inc., II*, 545 F.3d 304, 316 (5th Cir. 2008) (all physical evidence and

witnesses relating to the car wreck and crash site were in Dallas, not Marshall); *In re TS Tech USA Corp.*, 551 F.3d 1315, 1320-21 (Fed. Cir. 2008) (all physical evidence, including the accused vehicle parts, were "far more conveniently located" near the proposed venue). Here, the accused products are small devices that Defendant sells all over the world. iLife has already purchased physical samples of the accused devices which it keeps in this District. Accordingly, this factor weighs against transfer.

> **2.    The availability of compulsory process to secure the attendance of witnesses favors the Northern District of Texas.**

Transferring this case would impose a hardship on Plaintiff because the Northern District of Texas has absolute subpoena power over six important nonparty witnesses—all of whom have knowledge of technical, business, and patent prosecution issues likely relevant to Plaintiff's case:

> (1) Edward L. Massman is an inventor of seven of eight patents in this family, and he was the President of iLife. Massman's expected testimony will cover the invention story and iLife's efforts to develop and license patented products;
>
> (2) Charles M. Edwards was iLife's Chief Financial Officer and Vice President of Operations. He is expected to testify about iLife's products, operations, and finances;
>
> (3) William A. Munck of Munck Wilson Mandala, LLP in Dallas was a prosecuting attorney and has knowledge about the patents and prosecution history;
>
> (4) Daniel E. Venglarik of Munck Wilson Mandala, LLP in Dallas was a prosecuting attorney and has knowledge about the patents and prosecution history;
>
> (5) John T. Mockler of Carter Scholer Arnett Hamada & Mocker, PLLC in Dallas was a prosecuting attorney and has knowledge about the patents and prosecution history; and

(6) Frederick D. Hamilton, a solo practitioner in Dallas, was a prosecuting attorney and has knowledge about the patents and prosecution history.

Neither Massman nor Edwards has been employed by iLife for over 10 years, and their employment ended poorly (they were laid off when iLife closed its Dallas office and moved its headquarters to New York; afterward Massman sued iLife for unpaid compensation). Thus, the availability of compulsory process over these important witnesses strongly favors retaining this case in the Northern District of Texas.

For its part, Defendant argues that five of its officers and unspecified personnel responsible for research, design, development, and sales of the accused products are located in the Western District of Pennsylvania. But the second private interest factor only applies to nonparty witnesses. *See Emanuel v. SPX Corp./OTC Tools Div.*, CIV.A. 6:09CV220, 2009 WL 3063322, at *5 (E.D. Tex. Sept. 21, 2009) (citing *Volkswagen II*, 545 F.3d at 304); *Vargas v. Seamar Divers Intern.*, 2:10-CV-178-TJW, 2011 WL 1980001, at *5 (E.D. Tex. May 20, 2011) ("It is important to note that this factor considers only non-party witnesses."). Current employees can be presumed to appear willingly on behalf of their party employer. *Vargas*, 2011 WL 1980001, at *5; *Nokia Corp. v. Buca, Inc.*, 3-01-CV-2613-R, 2002 WL 1461913, at *2 (N.D. Tex. July 2, 2002) ("Nor has defendant shown that a transfer is necessary to obtain process to compel the attendance of reluctant witnesses. In fact, the only witnesses identified by defendant are its own employees.").

Defendant has identified three nonparty witnesses in Pennsylvania it claims may have relevant information:

- Chris Pacione, identified as one of Defendant's co-founders; and

- Mark Friedman and Michael Rencavage, identified as inventors of prior art cited by the patents.

Because Defendant provides no summary of their expected testimony, it is not possible to "assess the relevance or materiality of the information the witness may provide." *In re Genentech,* 566 F.3d at 1343–44. Indeed, there is no reason to believe Friedman and Rencavage are material witnesses. *See Sanofi-Aventis Deutschland GmbH v. Novo Nordisk, Inc.*, 614 F. Supp. 2d 772, 778 (E.D. Tex. 2009) ("[Defendant] does not explain why the location of the authors of the prior art cited in the patent would be relevant at all. It is highly unlikely that any of these authors would be called to testify at deposition or trial, or that any of their personal records relating to the references would contain relevant information."); *Mitel Networks Corp. v. Facebook, Inc.*, 943 F. Supp. 2d 463, 473-74 (D. Del. 2013) ("Facebook's selection of ten prior art inventors ignores the twenty-seven other named inventors of eleven other cited prior art U.S. patents and publications who live outside California. The court finds this selective identification of potentially relevant third-party witnesses to be unpersuasive and, in fact, arguably disingenuous.").[42]

On balance, this factor weighs against transferring the case from the Northern District of Texas where the Court has absolute subpoena power over Massman and Edwards, two important nonparty witnesses who may be unwilling to testify at trial

---

[42] For perspective, here, there are at least 55 other inventors of prior art cited in the patents scattered in 50 different locations around the world; they were not mentioned in Defendant's motion, which suggests that Defendant identified prior artists based on their proximity to Defendant's preferred venue — not because they are material witnesses.

outside the subpoena power of this Court, as well as all patent attorneys involved in prosecution of the patents in suit.

### 3. The cost of attendance for willing witnesses favors the Northern District of Texas.

The Fifth Circuit employs a 100-mile rule to assess the cost of attendance for willing witnesses. *See Volkswagen I*, 371 F.3d at 204–05. When the distance between an existing venue for trial of a matter and a proposed venue under § 1404(a) is more than 100 miles, the factor of inconvenience to witnesses increases in direct relationship to the additional distance to be traveled. *Id.* Additional distance means additional travel time; additional travel time increases the probability for meal and lodging expenses; and additional travel time with overnight stays increases the time which these fact witnesses must be away from their regular employment. *Id.* at 205. The Court must consider the convenience of both the party and nonparty witnesses. *Vargas v. Seamar Divers Int'l, LLC*, 2011 WL 1980001, at *7 (E.D. Tex. May 20, 2011). But this factor mostly concerns the convenience of nonparty witnesses. *John Crane*, 2012 WL 1605553, at *4.

### Nonparty witnesses

From Plaintiff's perspective, the most important nonparty witnesses are the inventors—Edward L. Massman, Michael D. Halleck, Michael E. Halleck, and Alan R. Owens. Charles M. Edwards, iLife's former CFO and VP of Operations, is also an important nonparty witness. And, depending on how the case develops, the prosecuting attorneys—William A. Munck, Daniel E. Venglarik, John T. Mockler, and Frederick D. Hamilton—may also be important nonparty witnesses.

17

For each of these witnesses, the cost and inconvenience to attend trial in the Western District of Pennsylvania is much higher than in this Court. Massman, Edwards, and the prosecuting attorneys would be forced to travel over 100 miles from home, spending days away from their families and businesses, as opposed to only a short drive downtown if the case remains in Dallas. Moreover, because there are three motions to transfer pending seeking multiple venues for the trials (with AliphCom and Fitbit seeking a transfer to the Northern District of California), the potential burden could be multiplied by three.

For the remaining nonparty witnesses—the three inventors in Colorado—the trip to Pittsburg is 661 miles farther and takes over an hour longer each way by air. While this is not a monumental difference, the trip to Pennsylvania is about twice as far and weighs against transfer under the 100-mile rule.

Defendant, for its part, has identified six nonparty witnesses. Three of them are purportedly co-founders of BodyMedia with knowledge about the accused products. But Defendant has not stated what roles, if any, they played in the development of the accused products. Moreover, the witnesses cancel one another out in terms of convenience because Chris Pacione lives in Pennsylvania, while David Andre and Astro Teller live in California. The Western District of Pennsylvania is more convenient for Pacione, but more inconvenient for Andre and Teller, who are 761 miles and 1.35 hours by air closer to the Northern District of Texas than the Western District of Pennsylvania.

Although Defendant has identified two inventors of prior art cited by the patents and considered by the examiner, Defendant has not provided any meaningful

explanation for why they are "key" witnesses *See USPG Portfolio Two, LLC v. John Hancock Real Estate Fin., Inc.*, 3:10-CV-2466-D, 2011 WL 1103372 (N.D. Tex. Mar. 25, 2011) ("The party seeking the transfer must specify clearly . . . the key witnesses to be called and their location and must make a general statement of what their testimony will cover."); *Mid-Continent Cas. v. Petroleum Solutions, Inc.*, 629 F. Supp. 2d 759, 763 (S.D. Tex. 2009) ("The Court is more interested in what the key witnesses will testify, as opposed to what they could testify, or what they have knowledge of."); *Sanofi-Aventis*, 614 F. Supp. 2d at 778 (explaining that inventors of prior art are not likely to have material information or be called upon to testify); *Mitel Networks*, 943 F. Supp. 2d at 473-74 (finding references to prior art inventors in defendant's preferred venue unpersuasive and arguably disingenuous).

### Party witnesses

Plaintiff's most important party witnesses are Michael Lehrman, who is an inventor and iLife's CEO, and Erich Eiselt, who is iLife's General Counsel and Vice President of Operations. Although these witnesses live closer to the Western District of Pennsylvania, the Northern District of Texas is more convenient for them because iLife's office, attorneys, and documents are located in the Northern District of Texas.

Defendant has identified five of its executive officers and unspecified other employees as party witnesses located in Pennsylvania. However, "where key witnesses are employees of the party seeking transfer, their convenience is entitled to less weight because that party will be able to compel their testimony at trial." *Frost v. ReliOn, Inc.*, No. 3:06–cv–0822–G, 2007 WL 670550, at *4 (N.D. Tex. Mar. 2, 2007) (*Comcast Cable*

*Commc'ns, LLC v. British Telecom. PLC*, 3:12-CV-1712-M, 2012 WL 6625359, at *4 (N.D. Tex. Dec. 20, 2012) (same). In short, Defendant impermissibly seeks to shift the burden, expense, and inconvenience of distant litigation to Plaintiff and nonparty witnesses located in this District. *See Mannatech*, 2010 WL 2944574, at *3.

Considering the locations of the likely witnesses, and giving the proper consideration to important nonparty witnesses who live and work in the Northern District of Texas, this factor weighs heavily against transferring the case.

**4.     All other practical problems that make trial of a case easy, expeditious, and inexpensive favor the Northern District of Texas.**

Practical problems include those that are rationally based on judicial economy. *In re Volkswagen of Am., Inc.*, 566 F.3d 1349, 1351–52 (Fed. Cir. 2009) ("Volkswagen III"). Particularly, the existence of duplicative suits involving the same or similar issues may create practical difficulties that will weigh heavily in favor or against transfer. *Id.* at 1351. This factor looks at "the situation which existed when suit was instituted." *In re EMC Corp.*, 501 Fed.Appx. 973, 976 (Fed. Cir. 2013) ("[A] district court may properly consider any judicial economy benefits which would have been apparent at the time the suit was filed."). Moreover, "experience with a patent in prior litigation and the copendency of cases involving the same patent are permissible considerations in ruling on a motion to transfer venue." *Id.* Other considerations, such as consistency, efficiency, and comity, also favor resolving related patent cases in the one forum when possible. *See MyMail, Ltd. v. Am. Online, Inc.*, 223 F.R.D. 455, 458 (E.D. Tex. 2004) ("The prospect of inconsistent claim construction favors resolving related patent cases in the same

forum when possible. Besides being a duplicative use of scarce judicial resources, two claim constructions risk inconsistency, create greater uncertainty regarding the patent's scope, and impede the administration of justice.").

Here, Plaintiff has filed nine related patent cases on the same patent family. When this case was filed on December 6, 2013, the related cases against OnAsset and Philips Lifeline were still ongoing: the parties had served infringement and invalidity contentions, exchanged proposed claim terms, conducted their JCCPS conferences, and drafted claim construction briefs; the *Markman* hearing was imminent. Principles of judicial economy, consistency, efficiency, and comity favored filing this related patent case in the same forum. Furthermore, the availability of local patent rules, the patent pilot program, and firm trial settings make litigating in the Northern District of Texas easy, expeditious, and inexpensive. However, if Defendant's motion is granted, future cases may be litigated and tried by multiple district courts in different venues across the country, wasting judicial resources and destroying any benefit of having the same judge preside over several cases involving the same patents and technology. Accordingly, this factor weighs against transfer.

**B.    The Public Interest Factors Favor the Northern District of Texas.**

> **1.    The administrative difficulties flowing from court congestion favor the Northern District of Texas.**

The speed with which a case can come to trial and be resolved is a factor in the transfer analysis. *In re Genentech*, 566 F.3d at 1347. The median time to disposition is 0.5 months faster and the median time to trial is 5.4 months faster in the Northern District

than in the Western District of Pennsylvania. This Court will even give the parties a trial setting in six months if both sides agree. While Defendant argues that this factor is speculative, none of the enumerated factors should be disregarded. *See In re Volkswagen II*, 545 F.3d at 316. Accordingly, this factor weighs against transfer.

## 2.   The local interest favors the Northern District of Texas.

iLife is a Texas company that has suffered a legal injury as a result of Defendant's unauthorized use of its patent rights. "The State of Texas has an interest in protecting its citizens from the tortious conduct of nonresidents aimed at its own residents. In this instance, [iLife] is a Texas corporation; therefore, there is good reason in keeping the litigation involving these parties here." *Mannatech*, 2006 WL 2216033, at *3; *Siragusa v. Arnold*, 3:12-CV-04497-M, 2013 WL 5462286, at *7 (N.D. Tex. Sept. 16, 2013) (same).

Plaintiff's presence and historical ties to the District weigh against transfer. In arguing otherwise, Defendant cites *In re Zimmer Holdings*, 609 F.3d 1378, 1381 (Fed. Cir. 2010) and *In re Microsoft*, 630 F.3d 1361, 1364-65 (Fed. Cir. 2011). *See* Def.'s Mtn. at 19. In *Zimmer*, the Federal Circuit refused to give deference to the plaintiff's office in the Eastern District of Texas because the plaintiff had extensive ties to Michigan, which included being incorporated in Michigan and maintaining a registered office in Ann Arbor, Michigan, and merely transported copies of its patent prosecution files from Michigan to a newly-established Texas office, which it shared with another of its trial counsel's clients. As such, the court discounted the plaintiff's connections to the forum as "recent, ephemeral, and an artifact of litigation." *Id.* In *Microsoft*, the facts were essentially the same, except the plaintiff "took the extra step of incorporating under the

laws of Texas sixteen days before filing suit." Because the plaintiff's parent was a foreign (United Kingdom) company with no prior connections to the Eastern District of Texas, the court discounted the Texas incorporation.

In contrast to *Zimmer* and *Microsoft*, this case has connections to Dallas dating back nearly 15 years. iLife was based in Dallas when it invented, patented, and developed the technology at issue. All prosecution of the patents in suit occurred in Dallas. All prosecution records have been continually maintained in Dallas. Efforts to commercialize the patents were directed by iLife's management team in Dallas. Most of the records requested by Defendant have been continually kept in the Northern District of Texas since they came into existence. And there are at least six nonparty witnesses located in Dallas who were intimately involved in developing this technology and securing the patents. These ties to the District are not "recent, ephemeral, or an artifact of litigation"—they existed long before litigation commenced.[43]

Plaintiff was incorporated in Texas in October 2012, and began enforcing and licensing its patents in the Northern District of Texas over a year before filing this lawsuit. Those activities are not "recent" or "ephemeral." *See NovelPoint*, 2010 WL 5068146, at *5 (E.D. Tex. Dec. 6, 2010) ("[S]ince NovelPoint filed its complaint four months after incorporation, NovelPoint's formation in Texas is not 'recent' under

---

[43] Defendant tries to discount iLife's connections to Dallas by pointing to the notice of removal filed in *Massman v. iLife*, No. 3:04-cv-588 (N.D. Tex. Mar. 19, 2004) (Doc. 1), which states "iLife is incorporated in Delaware and has its principal place of business in New York. iLife is not a citizen of Texas." But the lawsuit was filed in 2004—*after* iLife moved its headquarters to New York and closed its Dallas office.

Federal Circuit precedent."). Moreover, although Plaintiff's business relates to licensing and enforcement of iLife's patents, Plaintiff has continually conducted its business in the Northern District of Texas and supports the local economy through its presence and activities in the District. iLife has entered into licenses in Texas, which are governed by Texas law and enforceable in Texas. And this Court has continuing jurisdiction over the parties to enforce prior settlements. This is not a case where "every other activity is conducted far from the chartering state." *Cf. In re Microsoft*, 630 F.3d at 1364 (quoting *Koster v. Lumermens Mutual*, 330 U.S. 518, 527-28 (1947)). Plaintiff's choice to incorporate and operate its business in Texas was based on iLife's longstanding connections to Dallas and access to sources of proof and witnesses in this District, and not for any improper purpose.[44] Accordingly, iLife's presence, activities, and historical connections to this District weigh against transfer.

**3.    The familiarity of the forum with the law that will govern the case is neutral.**

The courts in either forum are perfectly capable of applying the federal patent laws. This factor is neutral and does not weigh in favor of a transfer.

**4.    The avoidance of unnecessary problems of conflict of laws is neutral.**

This action does not require any resolution of conflicts of laws or application of foreign laws. This factor is neutral and does not weigh in favor of a transfer.

---

[44] William A. Munck, the managing partner of Munck Wilson Mandala, LLP, has filed patent applications, prosecuted patents, and represented iLife for various legal matters since the 1990s. Defendant tries to characterize iLife's connections to the District as "recent, ephemeral, and an artifact of litigation" because attorneys at the same firm filed Plaintiff's articles of incorporation and obtained a local phone number. This argument might carry weight if Plaintiff had opened its office and filed suit in Marshall or Tyler—but not with the facts of this case.

**C.      The Interests of Justice Favor the Northern District of Texas.**

Even if the private and public interest factors weigh in favor of transfer, a court may "in the interest of justice" decline to transfer a case "[w]here there are related lawsuits involving the same plaintiff, the same patent, and similar technology, transfer to another venue will prevent the parties from taking advantage of the built-in efficiencies that result from having related cases before the same judge." *H-W Tech.*, 2013 WL 6333438, at *7-8 (internal citations omitted) (denying motion to transfer where four related actions involving the same patents and technology were already pending in the district). For the reasons stated in the "other practical problems" section above, the Court should decline to transfer this case "in interest of justice" under 1404(a).

## CONCLUSION

Because the private and public interest factors favor the Northern District of Texas, Defendant cannot establish that the Western District of Pennsylvania is "clearly more convenient" than Plaintiff's chosen forum. Accordingly, the Court should deny Defendant's motion to transfer and retain this case. Plaintiff requests all other relief to which it is justly entitled.

Respectfully submitted,

*/s/ S. Wallace Dunwoody*
Michael C. Wilson
mwilson@munckwilson.com
Texas Bar No. 21704590
S. Wallace Dunwoody
wdunwoody@munckwilson.com
Texas Bar No. 24040838

MUNCK WILSON MANDALA, LLP
12770 Coit Road, Suite 600
Dallas, Texas 75251
Phone: (972) 628-3600
Fax: (972) 628-3616

ATTORNEYS FOR PLAINTIFF,
ILIFE TECHNOLOGIES, INC.

## CERTIFICATE OF SERVICE

I certify that this document was filed and served to all counsel of record using

the Court's ECF system on April 16, 2014.

*/s/ S. Wallace Dunwoody*
S. Wallace Dunwoody

620075